U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 17, 2008**                                    **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| ROBERT WARREN PAIGE, | § | CASE NO. 04-20147-RLJ-7 |
| | § | |
| Debtor | § | |

_____

| | | |
|---|---|---|
| DUDLEY R. STANLEY and | § | |
| FLAGSHIP FINANCIAL CORPORATION, | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | ADVERSARY NO. 08-2011 |
| | § | |
| ROBERT WARREN PAIGE, | § | |
| | § | |
| Defendant | § | |

## <u>MEMORANDUM OPINION</u>

Before the Court are the claims of plaintiffs Dudley R. Stanley and Flagship Financial

Corporation ("Stanley/Flagship") that the discharge previously granted to defendant Robert

Warren Paige ("Paige") in his chapter 7 bankruptcy case should be revoked under either

subsection 727(d)(2) or (3) of the Bankruptcy Code. Paige contends that Stanley/Flagship's

claims are barred by res judicata as such claims arise out of the same facts and circumstances that were addressed by the Court in a prior Memorandum Opinion and Order issued in connection with a motion for sanctions initiated by the chapter 7 trustee, Kent Ries (referred to as "Ries" or "the trustee"), in Paige's chapter 7 bankruptcy case.  Paige also contends that the facts here do not implicate either subsection 727(d)(2) or (3) (which incorporates subsection (a)(6) of section 727).

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).  This Memorandum Opinion contains the Court's findings of fact and conclusions of law.  Bankruptcy Rule 7052.

### Statement of Facts

The claims here are, in large part, based on the same facts as those set forth by the Court in the Memorandum Opinion of March 28, 2007 (the "Memorandum Opinion").  The Memorandum Opinion resulted from a hearing before the Court on Ries's Motion to Compel Debtor to Turnover or to Approve Unauthorized Sale and to Sanction Debtor (the "Motion for Sanctions").  The Court hereby restates the facts from the Memorandum Opinion and sets forth the disposition of the Motion for Sanctions, followed by a statement of additional facts adduced from the hearing held on July 28, 2008 in the instant adversary proceeding.

1. <u>Facts from March 28, 2007 Memorandum Opinion</u>

Paige filed this chapter 7 case on February 6, 2004.  Ries is the appointed chapter 7 trustee charged with the responsibility of administering the assets in Paige's bankruptcy estate.  Paige is a medical doctor; in 2004, he was paid $869,810 from his professional association.

This case has spawned several lawsuits and other contested matters, including an objection to certain of Paige's exemptions, which was converted to an adversary

proceeding; an adversary complaint by the trustee seeking to recover certain alleged fraudulent transfers; and a declaratory judgment action initiated by LaDon Paige, Paige's wife, to which the trustee filed a counterclaim. Following the trial of the exemption adversary on November 15, 2005, the principal parties involved in the various disputes began discussing a global settlement. The parties involved in such negotiations were Ries, as bankruptcy trustee representing the interests of the bankruptcy estate, Paige, and Paige's non-filing spouse, LaDon Paige. Settlement discussions culminated in a settlement conference held on December 14, 2005, at which time the terms of a global settlement were agreed upon.[2]

Following the settlement conference, the parties began working on a formal settlement agreement and their due diligence related to same. By the settlement, the Paiges desired to resolve the various exemption issues, the fraudulent transfer suit relating to their children's trusts, the suit regarding LaDon Paige's separate property which, in turn, related to a post-nuptial agreement with Paige and issues regarding Paige's professional association. The estate, via the trustee Ries, desired to recover assets, either cash or property, for use in making distributions to creditors. A key aspect of the settlement from the estate's perspective was LaDon Paige's agreement to waive any claim to an entity, Bobladon, Ltd., in exchange for the estate waiving any community property interest to certain personal property that she claimed as her separate property. Bobladon, Ltd. did business under at least two other names, one, "Catco," which held several classic cars and motorcycles; and the other, "Paige Real Estate," which owned a storage building for Catco for use in storing the classic automobiles and motorcycles. It also owned six duplexes and a rental house. The issue of whether Paige, at the time of the bankruptcy filing, owned a one-half undivided interest in Bobladon, Ltd. or the entirety of the interest in Bobladon, Ltd. was resolved by the settlement with the bankruptcy estate receiving the entire interest in Bobladon, Ltd.

The parties signed the settlement agreement on June 7, 2006. The Court approved the settlement by its order entered on July 12, 2006, on Ries's motion seeking approval of the compromise. The parties closed the deal on August 10, 2006. As part of the settlement, eleven of the thirty classic vehicles and motorcycles owned by Bobladon, Ltd. were sold back to Paige for $854,538.03, which was the stated "book value" for the vehicles. Bobladon, Ltd., and thus the bankruptcy estate,

---

[2] The actual parties to the Settlement and Mutual Release Agreement are Dr. Robert Warren Paige, LaDon Carper Paige, Robert W. Paige, LaDon Carper Paige and Glenda J. Carper, as Co-Trustees of the Robert Clayton Paige Trust #1992 and the William Clarke Carper Paige Trust #1992 under a trust indenture dated May 4, 1992, Bobladon, Ltd. d/b/a Catco and Maverick Enterprises, Bobladon Management, L.L.C., Blessen Road Investments, L.L.C., Robert Warren Paige, M.D., P.A.,

Paige Real Estate Investments, L.P., Riders-in-the-Sky, Inc., and chapter 7 trustee, Kent David Ries, in his capacity as chapter 7 trustee and on behalf of the bankruptcy estate of Robert W. Paige.

retained the remaining nineteen vehicles. The settlement agreement specifically provides that the estate's ownership of Bobladon, Ltd. was effective as of February 6, 2004, the petition date.

The parties and their respective counsel attended the August 10, 2006 closing of the settlement agreement, along with representatives from Amarillo National Bank, FirstBank Southwest, and Dudley Stanley, a creditor of Paige. The documents were signed and the parties ostensibly worked out the logistics for having titles to the various vehicles transferred to reflect the agreement. Specifically, each title was reviewed and physically transferred to either the bankruptcy estate or Amarillo National Bank (for the debtor). Two titles were missing and Paige promised to deliver the missing two titles to the trustee. In addition, at the August 10, 2006 closing, the actual location of each car to be retained by Bobladon, Ltd. was supposedly verified by Paige. The "verified" locations for the cars to be retained by Bobladon, Ltd. were consistent with an inspection by Ries on February 6, 2006.

A few weeks prior to the closing, Paige called Ries to inquire about purchasing additional vehicles from the bankruptcy estate. Ries told Paige that such a sale was possible, but would have to take place after the closing of the settlement and upon notice in accordance with bankruptcy procedures. Ries also told Paige that his acceptance of any proposal would depend solely on whether any such sale was in the estate's best interest. On July 27, 2006, Paige submitted an offer to purchase seven of the nineteen vehicles that were to be retained by Bobladon, Ltd. under the settlement agreement. At the August 10, 2006 closing, however, Paige told the trustee that he was no longer interested in purchasing the seven vehicles, but indicated another offer may be forthcoming. Ries told Paige that he would consider any offers, but that the estate's auctioneer, Assiter & Associates, would be handling all sales negotiations concerning the vehicles.

Immediately after the August 10, 2006 closing, Ries began plans to liquidate the Bobladon, Ltd. assets. He hired real estate brokers to sell the Paige real estate properties and began negotiations with Barrett-Jackson Auction Company of Scottsdale, Arizona, with which the estate's main auctioneer, Assiter & Associates, had an affiliation. Barrett-Jackson is a leading auctioneer of classic vehicles. The trustee obtained an offer from Barrett-Jackson regarding the rate of commission, and other expenses, along with an agreement to highlight the vehicles held by Bobladon, Ltd. at a scheduled January 2007 Barrett-Jackson auction. On or about September, 2006, Ries learned from his auctioneer that four of the nineteen cars were missing. At this same time, specifically on September 14, 2006, Paige submitted to Ries a

- 4 -

handwritten fax offer to purchase the missing four cars. Over the next few weeks, the trustee's auctioneer was able to locate the four cars and learned that they had been moved to a Canadian auction house previously used by Paige, RM Auctions, Inc. The trustee then learned that the four missing cars had been sold by Paige through RM Auctions on August 5, 2006, at the Meadow Brook Hall in Rochester, Michigan. The sale took place, therefore, one week prior to the closing of the global settlement agreement. Paige's removal and sale of the four cars was not authorized by or known to the trustee. The total gross sales price received at the sale through RM Auctions, Inc. for the four cars was $648,500. By agreement between the trustee on the one hand and RM Auctions, Inc. and Paige on the other hand, and approved by this Court, the $648,500 was turned over to the trustee and the titles delivered to the purchasers at the RM Auction, Inc. auction.

The offer made by Paige for the seven cars on July 27, 2006, included the four missing cars at an aggregate price for the four cars of $565,000, the so-called "book value" for the four cars. His subsequent offer for the four cars, on September 14, 2006, after Ries learned the cars were missing, was $657,000.

At the hearing on the motion for sanctions, Paige was called as an adverse witness by the trustee, but, in response to all questions, he asserted his Fifth Amendment privilege and refused to testify.

March 28, 2007 Memorandum Opinion at 2-6.

2. Disposition of Motion for Sanctions

By the March 28, 2007 Memorandum Opinion, the Court determined that Paige's conduct in taking and selling the four cars was "intentional, deceitful, and done in bad faith . . . ." *Id*. at 11. The Court, therefore, sanctioned Paige in the amount of $80,000, which amount was, "in the Court's judgment, the minimum amount necessary to cover both the additional [attorney's] fees and expenses incurred by the [t]rustee in recovering the proceeds from the four cars and to deter similar conduct by Paige . . ." in the future. *Id*. at 13. The order entered on the Motion for Sanctions was not appealed and Paige paid the $80,000 sanctions' amount to the trustee.

3. Additional facts

(a) <u>Additional facts regarding Paige's disposition of the four cars</u>

Around the time Ries entered into the settlement agreement with Paige, he contacted Tommy Assiter, a local auctioneer with whom he had worked with on other cases, and requested that Mr. Assiter review the inventory of vehicles owned by Bobladon, Ltd. and advise him regarding a possible auction of the vehicles. In his efforts to evaluate the cars and to provide advice to the trustee, Assiter had several conversations with Paige. These conversations included inquiries regarding certain cars that were missing, including the four cars that are the subject of both this adversary proceeding, the trustee's adversary (discussed below), and the trustee's Motion for Sanctions. Paige told Assiter (as well as a Mr. Bennett who was apparently employed by Barrett-Jackson auction firm) that certain of the cars were in Canada undergoing repairs. He did not advise Assiter that he had sold the four cars through the RM Auction. In addition, Paige requested that Assiter speak to the trustee concerning Paige's proposal to purchase certain of the cars, including the four cars that he had sold.

Assiter recommended to Ries that the inventory of cars be placed with a larger, national auction firm, specifically Barrett-Jackson Auction Company. After reviewing the inventory of cars and speaking multiple times with Paige, and after having provided his recommendation to the trustee, Assiter had no further involvement in the ultimate disposition of the Bobladon cars. He was never formally employed by Ries and has thus made no claim against the estate for his services.

The four cars sold through RM Auction are described as a 1935 Lincoln Convertible Coupe, a 1937 Hudson 8 Convertible Coupe, a 1939 Graham model 97 SC, and a 1933 Chrysler Imperial Phaeton. The 1935 Lincoln was sold for the sum of $210,000; the documentation

concerning the sale of the Lincoln reflects that Paige was the consignor as well as the seller. The

1937 Hudson was sold for $66,000; the documentation concerning the auction of the 1937

Hudson reflects that Paige was the consignor and Bobladon, Ltd. was the seller. The 1939

Graham was sold for the sum of $117,500; the documentation concerning the sale of the Graham

reflects that Paige was the consignor and Bobladon, Ltd. was the seller. The 1933 Chrysler

Imperial was sold for the sum of $255,000; the documentation concerning the sale of the Chrysler

reflects that Paige was the consignor and Bobladon, Ltd. was the seller.

    (b) _Ries v. Paige_ - Adversary No. 07-2015

    A few months after disposition of the Motion for Sanctions, Ries, on August 10, 2007,

filed a separate adversary action against Paige ("Ries v. Paige"), adversary number 07-2015, in

which he asserted causes of action against Paige for fraud and misrepresentation, fraud in the

inducement, breach of warranty, and conversion. He requested the following forms of relief:

revocation of an order dismissing a prior adversary proceeding, actual and punitive damages,

rescission of the settlement agreement between the trustee and Paige, a preliminary injunction

requiring the maintenance of certain life insurance policies and other accounts, and revocation of

the discharge that was granted to Paige in his bankruptcy case. The trustee's counsel on this

action was Bart Pruitt, who also represents Stanley/Flagship here. (Mr. Pruitt subsequently

withdrew from his representation of the trustee.) This complaint was based on the same set of

facts upon which the Motion for Sanctions was based. By its Memorandum Opinion of July 23,

2008, the Court granted a motion for summary judgment filed by Paige. The Court held that the

proceedings and the ruling on Ries's Motion for Sanctions barred the trustee's causes of action in

07-2015 under principles of res judicata.

(c)  Paige's discovery responses and invocation of Fifth Amendment privilege

In connection with adversary number 07-2015, Paige, on January 2, 2008, answered interrogatories served on him by Ries through Ries's counsel, Mr. Pruitt, in which he made "general objections," including his assertion that he was not waiving his right to assert his privilege under the Fifth Amendment.  Pls' Ex. 38-A.  He also made specific objections to specific interrogatories.  *Id*.  Ries moved the Court to compel Paige's answers to the interrogatories.  The Court, by order of January 23, 2008, overruled Paige's objections to certain interrogatories.  Pls' Ex. 40-A.  The issue of Paige's Fifth Amendment privilege was not raised by the parties and obviously not by the Court at such time.

On February 1, 2008, Paige submitted amended answers to the interrogatories, specifically interrogatory numbers 1, 8, 18 and 19.  The interrogatories and the amended answers are as follows:

1.  Identify each person you plan to call as a fact witness at the trial of the above adversary proceeding.

Answer:

Robert Warren Paige, LaDon Paige, Kent Ries, Spanky Assister [sic], ANB Bank representative and Rob Myers (and/or other RM Auctions designee).  This answer does not include rebuttal witnesses.

8.  Do you contend that the Debtor owned the four vehicles described in the Memorandum Opinion dated March 28, 2007, attached hereto as Exhibit "A" at the time the Debtor sold the vehicles, and if so, state the factual basis for such contention?

Answer:

No. BobLadon, Ltd. d/b/a CATCO owned the four vehicles at the time that the vehicles were consigned for auction for sale.

18. Do you contend that you had any valid authority allowing you to take possession of and consign for auction the four cars described in the Court's Memorandum Opinion dated March 28, 2007?

<u>Answer</u>:

Defendant has not formed a contention with respect to the legal issue as to whether he had 'valid authority.' While Defendant does not contend that he had express authority, he contends that his prior course of conduct may have conferred upon him implied authority.

19. If your answer to the preceding Interrogatory is in the affirmative, then state how you believe you had or acquired valid authority to take possession of and consign for auction the cars in question.

Answer:

The four vehicles at the time of consignment were owned by BobLadon, Ltd. through its assumed name CATCO. Since Defendant was only a limited partner, he was not specifically authorized by BobLadon, Ltd. to consign the four vehicles in question. Moreover, LaDon Paige, as general partner of BobLadon, Ltd., did not expressly authorize Defendant to consign the four cars at auction. However, prior to the bankruptcy case, it was the regular and accepted practice for Defendant to manage CATCO and consign for auction vehicles owned by BobLadon, Ltd. d/b/a CATCO. As a result, Bobadon [sic] Ltd. d/b/a CATCO may have implicitly conferred valid authority by virtue of Defendant's prior course of conduct.

Pls' Ex. 38-B.

On April 30, 2008, Paige's deposition was taken in connection with both the instant adversary proceeding and adversary number 07-2015. In response to questions from Mr. Pruitt, as counsel for Stanley/Flagship, concerning Paige's disposition of the four cars, and whether he had any right or authority to take possession of and sell the four cars, Paige invoked the Fifth Amendment privilege and refused to answer such questions. Pls' Ex. 39-A. In addition, during the deposition, Paige confirmed his answer to the above interrogatory numbers one, eight, eighteen, and nineteen. *Id*. But, in doing so, he invoked his Fifth Amendment privilege and

refused to answer any followup questions from the interrogatory answers. *Id*. In summary, Paige, during the deposition, did nothing more than agree that he previously answered interrogatory numbers one, eight, eighteen, and nineteen, but otherwise invoked the privilege as to any questions asked regarding his interrogatory answers.

## Discussion

1. <u>Res judicata defense</u>

Paige contends that the March 28, 2007 Memorandum Opinion and the Order entered in connection with the Motion for Sanctions precludes Stanley/Flagship under principles of res judicata from asserting the causes of action here because of their involvement in the prior proceeding. Stanley/Flagship submit that they were not parties to the Motion for Sanctions, that they had, in effect, no standing to bring the Motion for Sanctions, and that such action was solely within the province of the trustee, Ries, and their participation was merely supportive of the trustee's position.

Under res judicata, subsequent suits may be barred under claim preclusion, true res judicata, or collateral estoppel, better known as issue preclusion. *Test Masters Educ. Serv., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). A party is barred from bringing subsequent litigation over claims that have previously been litigated or should have been litigated. *Id*. Res judicata applies when:

> (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions.

*Id.* Paige asserts the res judicata defense as to all of Stanley/Flagship's claims, both the subsection 727(d)(2) claim for acquiring property of the estate, and knowingly and fraudulently failing to report such acquisition or to surrender such property to the trustee; and the subsection 727(d)(3) claim (incorporating subsection (a)(6)) for refusing, on a ground other than the properly invoked privilege against self-incrimination, to respond to a material question approved by the Court or to testify.

    (a)  Res judicata not applicable to 727(d)(3) claim

As a threshold matter, the Court draws a distinction between the application of res judicata to Stanley/Flagship's claim under subsection (d)(2) of section 727 as opposed to its application to subsection (d)(3) of section 727. The (d)(2) claim is based on the same facts as those upon which the Motion for Sanctions was based. The second claim, the (d)(3) claim, is not based on the same facts. It arises, in large part, out of Paige's discovery responses, specifically his January 2, 2008 answers to interrogatories, his February 1, 2008 amended answers to interrogatories, and his invocation of the Fifth Amendment privilege during the April 30, 2008 deposition. The subsection 727(d)(2) claim arises out of the "same nucleus of operative facts" as did the Motion for Sanctions; just as clearly, the subsection 727(d)(3) claim (and (a)(6)) does not. Accordingly, the same cause of action is not involved both here and in the Motion for Sanctions on the (d)(3) claim and res judicata is not applicable. *See* July 23, 2008 Memorandum Opinion in *Ries v. Paige*, adversary no. 07-2015.[1]

---

[1]The Court's July 23, 2008 Memorandum Opinion issued in the *Ries v. Paige* adversary proceeding addressed whether substantive claims by the trustee were barred by res judicata, specifically, whether such claims involved the same cause of action as raised in the Motion for Sanctions. As discussed therein, resolution of this question turned on the Fifth Circuit's opinion in *In re Intelogic Trace*, 200 F.3d 382 (5th Cir. 2000).

(b) <u>Applicability of res judicata to 727(d)(2) claim -- identity of parties element</u>

The Court addresses the elements of res judicata as they apply to the subsection 727(d)(2)

claim made by Stanley/Flagship. First, the second and third elements of res judicata are not in

dispute. Plus, the Court held in *Ries v. Paige* that Ries's revocation claims arose from the same

nucleus of operative facts as those considered in the Motion for Sanctions proceeding, and thus

concluded that the same cause of action was involved in both actions. As stated,

Stanley/Flagship base their revocation claim under subsection 727(d)(2) upon the same facts, the

facts that are quoted above from the Court's March 28, 2007 Memorandum Opinion. As with

*Ries v. Paige*, the (d)(2) claim involves the same cause of action as did the Motion for Sanctions.

The question, then, is whether Stanley/Flagship's involvement and interest in the Motion for

Sanctions proceeding mean they satisfy the identity of parties requirement, the first element of

res judicata.

Considered to be one of the fundamentals of American Jurisprudence is the notion that

one not a party to a suit is not bound by the judgment. *Martin v. Wilks*, 490 U.S. 755, 761-62

(1989) (citations omitted). "A judgment or decree among parties to a lawsuit resolves issues as

among them, but it does not conclude the rights of strangers to those proceedings." *Id*. at 762.

Typically, in order to bind one to the lawsuit, the parties must follow the procedures of joinder or

intervention as set forth in the Federal Rules of Civil Procedure, or as in this case, the Federal

Rules of Bankruptcy Procedure. *See id*. at 763. "'Unless duly summoned to appear in a legal

proceeding, a person not a privy may rest assured that a judgment recovered therein will not

affect his legal rights.'" *Id*. (quoting *Chase Nat'l Bank v. Norwalk*, 291 U.S. 431, 441 (1934).

(c) <u>*Taylor v. Sturgell* - virtual or adequate representation/other exceptions</u>

Paige argues that Stanley/Flagship must either be considered to have been parties to the Motion for Sanctions or, alternatively, to have been "virtually represented" by the trustee, Ries, in connection with the Motion for Sanctions. Whether Stanley/Flagship's participation in the Motion for Sanctions or the trustee's handling of the matter is sufficient to satisfy the first element of res judicata is a complex question. To begin the analysis, the Court turns first to the recent opinion of the Supreme Court in *Taylor v. Sturgell*, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008). In *Taylor v. Sturgell*, the Supreme Court addressed "whether there is a virtual representation" exception to the general rule "that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Id*. at 2166-67. The Supreme Court noted that "[a] person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit." *Id*. at 2171. The Supreme Court recognized, however, that "[t]hough hardly in doubt, the rule against nonparty preclusion is subject to exceptions." *Id*. at 2172. The Supreme Court grouped the recognized exceptions into six categories.[2]

> First, "[a] person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement."
> . . . .

> Second, nonparty preclusion may be justified based on a variety of pre-existing "substantive legal relationship[s]" between the person to be bound and a party to the judgment. Shapiro 78. See also *Richards,* 517 U.S., at 798, 116 S.Ct. 1761. Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor . . . .

---

[2]The Supreme Court stated that the established grounds for nonparty preclusion could be organized differently and that its list was intended to provide a framework for its consideration of the question of virtual representation, which was the specific exception to the rule against nonparty preclusion that was before the Court.

Third, . . . "in certain limited circumstances," a nonparty may be bound by a judgment because she was "adequately represented by someone with the same interests who [wa]s a party" to the suit. *Richards,* 517 U.S., at 798, 116 S.Ct. 1761 (internal quotation marks omitted). Representative suits with preclusive effect on nonparties include properly conducted class actions, see *Martin,* 490 U.S., at 762, n. 2, 109 S.Ct. 2180 (citing Fed. Rule Civ. Proc. 23), and suits brought by trustees, guardians, and other fiduciaries, see *Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 593, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974). See also 1 Restatement § 41.

Fourth, a nonparty is bound by a judgment if she "assume[d] control" over the litigation in which that judgment was rendered. *Montana,* 440 U.S., at 154, 99 S.Ct. 970. See also *Schnell v. Peter Eckrich & Sons, Inc.,* 365 U.S. 260, 262, n. 4, 81 S.Ct. 557, 5 L.Ed.2d 546 (1961); 1 Restatement § 39. Because such a person has had "the opportunity to present proofs and argument," he has already "had his day in court" even though he was not a formal party to the litigation . . . .

Fifth, a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy. Preclusion is thus in order when a person who did not participate in a litigation later brings suit as the designated representative of a person who was a party to the prior adjudication. See *Chicago, R.I. & P.R. Co. v. Schendel,* 270 U.S. 611, 620, 623, 46 S.Ct. 420, 70 L.Ed. 757 (1926); 18A Wright & Miller § 4454, pp. 433-434. And although our decisions have not addressed the issue directly, it also seems clear that preclusion is appropriate when a nonparty later brings suit as an agent for a party who is bound by a judgment . . . .

Sixth, in certain circumstances a special statutory scheme may "expressly foreclos[e] successive litigation by nonlitigants . . . if the scheme is otherwise consistent with due process."

*Id*. at 2172-73.

In addition to the above six established categories, the Supreme Court noted that "some lower courts have recognized a "virtual representation" exception to the rule against nonparty preclusion." *Id*. at 2173. The Supreme Court stated as follows:

Some Circuits use the label [of virtual representation], but define "virtual representation" so that it is no broader than the recognized exception for adequate representation. (citations omitted) But other courts, including the Eighth, Ninth, and D.C. Circuits, apply multifactor tests for virtual representation that permit nonparty preclusion in cases that do not fit within any of the established exceptions. (citations omitted)

*Id*. at 2173. The Supreme Court rejected a broad doctrine of virtual representation, holding that a

> party's representation of a nonparty is "adequate" for preclusion purposes only if,
> at a minimum: (1) the interests of the nonparty and her representative are aligned
> (citations omitted); and (2) either the party understood herself to be acting in a
> representative capacity or the original court took care to protect the interests of the
> nonparty, (citation omitted). In addition, adequate representation sometimes requires
> (3) notice of the original suit to the persons alleged to have been represented . . . .

*Id*. at 2176.

As stated, Paige argues that the trustee, Ries, virtually represented Stanley/Flagship in

connection with the Motion for Sanctions. However, the Supreme Court emphasized that its

rejection of the broad doctrine of virtual representation rested on the limitations attending

nonparty preclusion based on the adequate representation exception. As a result, neither the

virtual representation exception nor the adequate representation exception can be applied here.

Ries and Stanley/Flagship do not, by the terms of the statute, have the same interests in a

revocation of discharge action. Subsection 727(d) provides that the trustee, a creditor, or the

United States trustee may request a revocation of discharge. 11 U.S.C. § 727(d). Each potential

party -- the trustee, a creditor, or the United States trustee -- has an independent right to bring a

revocation of discharge claim under subsection 727(d). *The Cadle Co. v. Reed*, No. 3:06-CV-

2186-M, 2008 WL 2787869, at *6 (N.D. Tex. July 18, 2008); *see also In re Hansen*, 368 B.R. 868,

879 (B.A.P. 9th Cir. 2007) (holding that a creditor's interest in a subsection 727(a) action, an

action seeking denial of discharge, is similar but not identical to the interests of a trustee in such

action and therefore the creditor cannot be bound by the trustee's settlement of a subsection

727(a) action that is based on the same grounds).

(d) <u>Stanley/Flagship as parties to the Motion for Sanctions</u>

The question, then, devolves to whether Stanley/Flagship were in fact parties to the Motion for Sanctions proceeding or whether their involvement satisfies one of the other recognized exceptions. In *Taylor v. Sturgell*, the party against whom res judicata was asserted was clearly not a party to the first action. Parties to federal lawsuits are generally easily identified. The named plaintiff and named defendant are parties. Ries and Paige were clearly parties to the Motion for Sanctions proceeding. Stanley/Flagship, as creditors, are parties to Paige's underlying bankruptcy case in which the Motion for Sanctions, a contested matter, arose. They also participated extensively in the Motion for Sanctions proceeding. They filed a response to the Motion for Sanctions and joined the trustee in his request for sanctions (and/or damages) and a constructive trust. Their counsel, Mr. Pruitt, took Paige's deposition; at the hearing on the Motion for Sanctions, their counsel made an opening statement, questioned witnesses, and made a closing argument. Their involvement was as extensive as was the trustee's.

Stanley/Flagship argue that the Motion for Sanctions was solely the trustee's motion and that they were merely cheerleading. The Court concedes that while Stanley/Flagship were not seeking a direct recovery from Paige, they were, as major creditors in the case, fully cognizant that they would share in any recovery or sanction awarded on the matter, especially if an award was made in the amount requested both by the trustee and Stanley/Flagship.

Stanley/Flagship argue that they should not be deemed parties to the Motion for Sanctions because they are not signatories to the underlying settlement agreement which Paige arguably breached by taking and selling the four cars. However, while they did not sign the settlement agreement itself, Dudley Stanley was present at the closing of the settlement agreement; and they were fully aware of the terms of the settlement agreement. They knew that

the settlement agreement was negotiated by the trustee with the best interests of creditors in mind, specifically Stanley/Flagship. They were formally provided with notice of the settlement agreement and the Court's consideration of the settlement agreement. They filed no objection to the settlement agreement; the Court infers that they specifically approved of the terms of the settlement agreement and knew they would be the primary beneficiaries of the settlement agreement. They clearly had a stake in the matter; Paige's wrongful conduct triggered both the trustee's *and Stanley/Flagship's* response -- the filing and prosecution of the Motion for Sanctions.

The Motion for Sanctions was prosecuted by the trustee for the benefit of the bankruptcy estate. Stanley/Flagship, the Court concludes, chose to make themselves parties to the action. They were just as much a party as one that has joined a typical federal lawsuit under Rule 20 of the Federal Rules of Civil Procedure. No objection was raised to their joinder and they proceeded to participate as a moving party. The Court concludes that Stanley/Flagship were parties to the Motion for Sanctions.

    (e) <u>Stanley/Flagship as nonparties assuming control</u>

The Court recognizes that the foregoing analysis may, arguably, be properly made within the context of the fourth exception recognized by the Supreme Court in *Taylor v. Sturgell* -- the assumption of control exception. To extend the analysis within the parameters of this exception, the Court looks first to the Restatement (Second) of Judgments at section 39, which states that "[a] person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party."

> [O]ne who . . . assists in the prosecution or defense of an action in aid of some interest of his own, and who does this openly, to the knowledge of the opposing party, is as much bound by the judgment . . . as he would be if he had been a party to the record.

*Souffront v. La Compagnie des Sucreries de Porto Rico*, 217 U.S. 475, 487 (1910). The nonparty's participation has been characterized as elevating a nonparty to a de facto party thereby subjecting them to the preclusionary effects of the prior litigation. *See* 18A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4451 (2d ed. 2002); *see also Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 869-70 (5th Cir. 1984) (holding that president of corporation sufficiently participated in the proceedings to be considered a party).

The determination of how much control satisfies the exception is a question of fact "to be determined by looking for that measure of 'practical control' that makes it fair to impose preclusion." FEDERAL PRACTICE AND PROCEDURE § 4451. The level of control does not require named parties to relinquish control, but sufficient control as would be expected between co-parties. *Id*. The Supreme Court has characterized the necessary control as one having a "sufficient 'laboring oar' in the conduct of the [prior] litigation." *Montana v. United States*, 440 U.S. 147, 154-55 (1979) (quoting *Drummond v. United States*, 324 U.S. 316, 318 (1945)).

Stanley/Flagship's control was no less than that of a co-party. They had a "sufficient 'laboring oar' in the conduct" in the sanctions hearing and had their day in court. *See Montana*, 440 U.S. at 154-55; *see also Schnell v. Peter Eckrich & Sons, Inc.,* 365 U.S. 260, 262, n. 4 (1961). Stanley/Flagship's participation rose to the level of a de facto party and, therefore, satisfies the control exception. *See Southmark*, 742 F.2d at 869-70.

    (f) <u>Whether Stanley/Flagship could have or should have sought revocation of discharge</u>

The four elements of res judicata are met on Stanley/Flagship's subsection 727(d)(2) claim. The Court must still determine whether Stanley/Flagship's claim could have or should have been brought in the prior proceeding, however. *Howe v. Vaughan (Matter of Howe)*, 913 F.2d 1138, 1145 (5th Cir. 1990). The Court, in *Ries v. Paige*, found this requirement was met because the trustee, Ries, had an awareness of the other potential claims against Paige and that the bankruptcy procedures, specifically the adversary rules under part seven of the Bankruptcy Rules, afforded the necessary procedural means for litigating such claims. *See* July 23, 2008 Memorandum Opinion on *Ries v. Paige*, at 8-9, citing *In re Intelogic Trace*, 200 F.3d 382, 388 (5th Cir. 2000). Just as the Court found in *Ries v. Paige*, the Court discerns no practical reason why Stanley/Flagship was prevented or thwarted in any way from asserting their revocation claims within the context of the prior proceeding.

Even if Stanley/Flagship are technically characterized as nonparties to the Motion for Sanctions, but with sufficient control to satisfy the control exception, the Court looks to the undisputed named-party, here the trustee, Ries, in resolving this could-have or should-have requirement.

Both parties and their privies are barred from relitigating matters that could or should have been raised in the prior proceeding. *Eubanks v. FDIC*, 977 F.2d 166, 173 (5th Cir. 1992) (quoting *Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972)). In determining whether the action could or should have been litigated, the courts look to the parties in the previous proceeding. *Eubanks*, 977 F.2d at 173 (stating that the focus is on whether the prior

party could have or should have brought the claim). A party includes one who is a named party or one who rises to the level of a de facto party. *See Southmark*, 742 F.2d at 870. In the case of privies, the court still looks at whether the representative party could or should have brought the action in the prior proceeding. *See Eubanks*, 977 F.2d at 173; *In re Intelogic Trace*, 200 F.3d at 388. For the reasons summarized above and as explained in detail in *Ries v. Paige*, the trustee could have or should have brought his substantive claims; therefore, so could have Stanley/Flagship. *Id*.

 

    2. <u>Subsection 727(d)(3) (and (a)(6)(C)) claim</u>

    Subsection 727(d)(3) states that the court shall revoke a discharge if the debtor commits any act specified in subsection 727(a)(6). § 727(d)(3). Stanley/Flagship allege that Paige violated subsection 727(a)(6)(C), which provides that the debtor's discharge may be denied if

> (6)    the debtor has refused, in the case—
> . . .
> (C) on a ground other than the properly invoked privilege against self-incrimination, to respond to a material question approved by the court or to testify . . . .

§ 727(a)(6)(C). Thus, in order for the Court to revoke Paige's discharge, it must be shown first that Paige improperly invoked his privilege against self-incrimination, and, second, that Paige refused to answer a material question approved by the Court.

    (a) <u>Invocation of a privilege against self-incrimination</u>

    A party may invoke his privilege against self-incrimination if the answer to a question or testimony poses a real danger of criminal responsibility. *See McCarthy v. Arndstein*, 266 U.S. 34, 40 (1924). A party may, however, waive his ability to invoke his privilege to subsequent

questioning by answering questions that already disclosed incriminating facts. *Rogers v. United States*, 340 U.S. 367, 372-73 (1951). Moreover, "[d]isclosure of a fact waives the privilege as to details." *Id*. at 373. Thus, a party who voluntarily reveals incriminating facts cannot invoke the privilege to prevent disclosure regarding the details of those facts. *Id*. Nonetheless, the court's analysis does not end there because the court must determine whether further questioning "subject[s] the witness to a 'real danger' of further crimination." *Id*. at 374. In fact, "the [party] may still 'refuse to answer any questions about a matter already discussed, even if facts already revealed are incriminating, as long as the answers may tend to further incriminate [the party].'" *In re Hulon*, 92 B.R. 670, 674 (Bankr. N.D. Tex. 1988) (quoting *In re Master Key Litigation*, 507 F.2d 292, 294 (9th Cir. 1974)); *see also Duffy v. Currier*, 291 F. Supp. 810, 814-15 (D. Minn. 1968) (finding that subsequent questioning in deposition would cause the defendant to further incriminate himself).

   *Duffy* is on point with the case at hand. *Duffy* dealt with a wrongful death action that stemmed from a car accident. *Duffy*, 291 F. Supp. at 811-12. The plaintiff served the defendant with a set of interrogatories which the defendant answered, admitting that the defendant drank beer and drove the car involved in the accident. *Id*. at 814. The plaintiff then took an oral deposition of the defendant at which the defendant invoked his privilege against self-incrimination. *Id*. The plaintiff argued that the privilege had been waived by the defendant's earlier answers to interrogatories. *Id*. The district court, nonetheless, sustained the defendant's assertion of privilege because the court found that further questioning would further incriminate the defendant beyond what might have been done by answering the interrogatories. *Id*.

Here, Paige asserted his privilege against self-incrimination during an oral deposition after already answering interrogatories that dealt with the same facts. Stanley/Flagship allege that Paige waived his privilege by answering the interrogatories and therefore has improperly invoked his privilege against self-incrimination. Stanley/Flagship, however, never attempted to compel Paige to answer the deposition question and never sought a determination from this Court of whether Paige could invoke his privilege against self-incrimination. The deposition questioning, at least arguably, could have further incriminated Paige. If so, Paige still had the right to invoke his privilege against self-incrimination. *See Rogers*, 340 U.S. at 374.


(b)  <u>Material question approved by the court</u>

Even if the Court determined that Paige improperly invoked his privilege against self-incrimination, the Court must decide if Paige refused to answer a material question *approved* by the Court. *See* § 727(a)(6)(C); *see also In re Jones*, 490 F.2d 452, 456 (5th Cir. 1974) (the court held in an action under the Bankruptcy Act that the right to a discharge is statutory and the construction of a provision of the Act that results in denial of the discharge should be made "liberally in favor of the bankrupt and strictly against the objecting creditor"). The questions, therefore, which a debtor refuses to answer must be material and approved by the court. *See Chicago Title Ins. Co., Inc. v. Mart (In re Mart)*, 90 B.R. 547, 548 (Bankr. S.D. Fla. 1988) (finding that proponent of the deposition did not seek approval of the questions); *see also Gore v. Kressner (In re Kressner)*, 206 B.R. 303, 317 (Bankr. S.D.N.Y. 1997) (refusing to answer question in Rule 2004 examination ordered by the court did not amount to a refusal to answer a

question ordered by the court). "The debtor's refusal to answer a question that has not been approved by the court is not a basis for denial of a discharge." 6 GOLDSTEIN, SHEINFELD, SOMMER & ZARETSKY, COLLIER ON BANKRUPTCY ¶ 727.09[3] (15th ed. rev. 2008). The burden to seek approval by the court is on the proponent of the question. *See In re Mart*, 90 B.R. at 548. In fact, if the proponent of the question never seeks approval, the debtor does not violate subsection 727(a)(6)(C). *Id*.

The Court was unable to find any case law addressing whether a prior approved interrogatory is deemed an approved question by the court when asked at a subsequent oral deposition. However, the analysis should be similar to the analysis in determining whether a debtor can invoke his privilege against self-incrimination during an oral deposition even though the debtor revealed incriminating facts in an interrogatory. *See e.g.*, *Duffy*, 291 F. Supp. at 814. In other words, each question should be considered separate and apart from the prior question. Furthermore, the discharge provision should be construed in favor of the debtor and against the party seeking revocation. *See In re Jones*, 490 F.2d at 456. Thus, it falls upon the party seeking revocation to obtain court approval of the question. *See In re Mart*, 90 B.R. at 548. If the party fails to seek court approval, even though a prior similar question was approved earlier by the court, the debtor may refuse to respond without violating subsection 727(a)(6)(C). *See id*.

Paige did not improperly invoke his privilege against self-incrimination; the Court was not called upon to "approve" a question, thus Paige did not refuse to answer such a question. *See In re Hulon*, 92 B.R. at 674 (stating that privilege still exists if question further incriminates the debtor); *Duffy*, 291 F. Supp. at 814 (same); *In re Mart*, 90 B.R. at 548 (stating that debtor does not violate discharge provision if the question was not approved by the court). While Paige did

reveal incriminating facts during the interrogatory, he can still invoke his privilege against self-incrimination if the questions asked at the deposition posed a real danger of further incrimination. *See In re Hulon*, 92 B.R. at 674. The Court concludes that Paige did not violate subsection 727(a)(6)(C) of the Bankruptcy Code.

### Conclusion

For the reasons stated, the Court concludes that res judicata bars Stanley/Flagship's claim made under subsection 727(d)(2) of the Bankruptcy Code. In addition, Stanley/Flagship's claim for revocation of discharge under subsection 727(d)(3) (and such provision's incorporation of subsection 727(a)(6)) is not barred by res judicata because such claim does not arise from the same facts as does the Motion for Sanctions proceeding and, therefore, is not the same cause of action. Such other facts do not, however, satisfy the specific requirements of subsection (a)(6) of section 727. A careful analysis of the facts do not support a conclusion that Paige either improperly invoked his privilege against self-incrimination or that the questions asked to which the privilege was asserted were "approved" by the Court.

In reaching this decision, the Court in no way condones Paige's conduct that is outlined here and in the Court's prior Memorandum Opinion. Such conduct may, at the very least, constitute a fraud on the trustee, the bankruptcy estate, its creditors, and the Court. The prior adjudication before this Court on the Motion for Sanctions did, at least in part, address Paige's improper conduct. However, the application of res judicata prevents the Court from deciding whether another and further remedy is proper.

### End of Memorandum Opinion ###